**Steven M. CASTILLO, Petitioner–Appellant,**

v.

**Jerry S. STAINER, Respondent–Appellee.**

**No. 91–16146.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1992.

Decided Dec. 22, 1992.

---

1. As part of Feldman's original sentence, he was ordered to pay $70 million in restitution to Bank of America.

Lauren Weil, Asst. Federal Public Defender, Sacramento, CA, for petitioner-appellant.

Michael J. Weinberger, Deputy Atty. Gen., Sacramento, CA, for respondent-appellee.

Before BOOCHEVER, NOONAN and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Steven M. Castillo seeks habeas corpus, having been convicted of murder in California. The district court·denied his petition. We affirm.

### FACTS

Castillo was convicted of aiding and abetting the murder of Eric Reimer by Ramon Arreaga on March 16, 1987. The state presented evidence that Arreaga entered the Bob–Les bar and shot Reimer four times in the head. He then left the bar, got into his car, and drove off. The evidence against Castillo was that shortly before the shooting he was seen talking to Arreaga in the Bob–Les parking lot. After the shooting Castillo was in the parking lot with a rifle in his hands and fired shots at two persons who came into the parking lot following Reimer's murder. Castillo accompanied Arreaga in his getaway and, when the car got stuck and was abandoned, continued to accompany Arreaga. When police told them to freeze, both Arreaga and Castillo ran.

They were later apprehended together and when put in the police car, Castillo told Arreaga, "We did it man, we did it; it's okay." Castillo also telephoned Jona Hamlin, an off-duty bartender at the Bob–Les club, before his arrest and asked for someone named Johnny. She told him that Johnny was not there and then asked "Why?" Castillo replied, "I had to. It was a contract."

Arreaga and Castillo were tried together for murder. Castillo was shackled by his waist and left arm when he appeared in the courtroom. The trial court ordered that his arm be freed, but deferred ruling on the waist chain until it could hear from the sheriff's office about him. Later the same day the sheriff's department informed the court that Castillo was housed in a disciplinary "separation area" for having assaulted other inmates. Castillo was permitted to conceal the waist chain by putting his shirt over it. When he testified he

was escorted to and from the witness chair outside the jury's presence. According to Castillo's declaration, several members of the jury pool did see him in the corridor in shackles.

At trial, the court rejected the request of Castillo's counsel to cross-examine government witness Leonard Lopez regarding a pending state case against him to determine if any deal had been offered in exchange for his testimony.

After exhausting his appeals in the state system, Castillo filed a pro se petition for habeas corpus. Without holding an evidentiary hearing, a magistrate made findings and a recommendation denying the writ; the district court adopted the magistrate's report in full.

Castillo appealed. In the course of the appeal he filed an affidavit of counsel claiming that the shackling interfered with counsel-client communication. The affidavit was not part of the record in the district court and comes too late to be considered here.

### ANALYSIS

Castillo's objection to the limit on Lopez's cross-examination is without merit. *See United States v. Jenkins*, 884 F.2d 433, 436 (9th Cir.) (holding that trial court retains discretion to limit cross-examination as long as the jury has sufficient information to evaluate the possible motivations and biases of the witness), *cert. denied*, 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989). We turn to his principal contention.

This court has announced the standard by which it reviews a state trial court's decision to shackle a defendant as "an abuse of discretion standard." *Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir.), *cert. denied*, 498 U.S. 832, 111 S.Ct. 95, 112 L.Ed.2d 67 (1990). A federal court, however, has no jurisdiction to review mere abuses of discretion by a state trial court. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, — U.S. ——, 112 S.Ct. 475, 480, 116

L.Ed.2d 385 (1991); 28 U.S.C. § 2241 (1988).

Consequently, the announced standard must be read as a cryptic way of stating that a federal court in this circuit holds it to be a denial of due process of law if a state trial court, without complying with the criteria set by this court, orders shackling of such a character that it denies the defendant due process of law. The error then is of constitutional magnitude. We so held in *Spain v. Rushen*, 883 F.2d 712, 715 (9th Cir.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300, and *cert. denied*, 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 534 (1990), the only published decision of this circuit actually finding such a denial of due process.

■ According to our criteria, the trial court "must be persuaded by compelling circumstances" that some measures were needed to maintain security. *Jones*, 899 F.2d at 885. Then, the court must "pursue less restrictive alternatives before it imposes physical restraints." *Id.* As we have said, quoting dicta in *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), shackling may be used only as a "last resort." *Jones*, 899 F.2d at 885.

■ In deciding what are the less restrictive alternatives, the state trial court must begin by assessing "the limitations" present if shackles are applied. *Id.* These so-called "limitations," or, more precisely, harms, include (1) reversal of the presumption of innocence, (2) impairment of the defendant's mental ability, (3) impeding of communication between the defendant and his counsel, (4) detraction from the decorum of the trial, and (5) pain. *Id.* "After considering these factors, the trial judge 'must weigh the benefits and [these] burdens of shackling against other possible alternatives.'" *Id.* (quoting *Spain*, 883 F.2d at 721).

It is apparent that the trial court did not comply with the criteria laid down by this circuit. Certainly, the report of the sheriff's department suggested that some measures were needed to maintain security. But the trial court did not undertake the

analysis we have required, did not consider the various burdens imposed by shackling, and did not weigh these burdens "against other possible alternatives." The waist chain was not the court's "last resort." Nor did the trial court take any steps to ascertain whether Castillo had been prejudiced by being seen in shackles by members of the jury pool.

It has been argued that not every shackling must be justified by the criteria set out in *Jones*. It is true that only the most egregious kind of shackling has been found by us to deny due process. *See Spain*, 883 F.2d 712 (defendant chained for seventeen months of trial, bound to his chair in the courtroom by a waist chain to which each of his hands was also bound). But in other cases we have declined to set aside the defendant's conviction only after assuring ourselves that the criteria justifying chaining had been met. *King v. Rowland*, 977 F.2d 1354 (9th Cir.1992) (holding that use of leg irons on the defendant did not constitute reversible error since the state trial court considered less restrictive alternatives to restrain the disruptive defendant who had assaulted his court-appointed attorney earlier in the trial, and that the leg irons were not sufficiently and constantly exposed to the jury's attention so as to reverse the presumption of innocence); *Jones*, 899 F.2d at 885 (holding that state trial court properly ordered that disruptive defendant, who threatened physical injury to a codefendant, the bailiff, and his own counsel, be handcuffed to his wheelchair due to presence of these compelling circumstances and the fact that the court considered and used the least restrictive alternative by permitting the defendant to cover the handcuffs with a sweater or jacket to minimize possible prejudice to the jury); *Hamilton v. Vasquez*, 882 F.2d 1469, 1472–73 (9th Cir.1989) (remanding to the district court because the state court trial record needed to be examined to determine whether compelling circumstances existed to justify the shackling of the defendant since the district court failed to establish an adequate record).

In the light of these precedents, it is too late in the day for us to say that chaining of a defendant in a courtroom during trial may ever be done without compliance with our criteria. Unless we were to abandon doctrine repeatedly announced and applied, we are bound to hold that constitutional error is committed by a state court that shackles without such compliance.

■ Chaining of a prisoner in transport to the courtroom is a different matter. In our supervision of the district courts, we have said that the defendant could ask for a voir dire of the jury if a juror saw the defendant in handcuffs outside the courtroom. *United States v. Halliburton*, 870 F.2d 557, 561 (9th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 575 (1989). But we have no rule that requires a state court to conduct such a voir dire in the event of such a brief and accidental viewing of the defendant in a corridor, chained as Castillo alleges he was here. No harm that rises to a constitutional level is done by such an unintended, out-of-court occurrence.

■ We are left with constitutional error by the court permitting Castillo's shackling during the trial. There are constitutional violations, broadly described as "structural," which so impair a fair trial that by definition they can never be harmless. *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828 & n. 8, 17 L.Ed.2d 705 (1967). The category is limited and is exemplified by such classic cases as the denial of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and trial by a judge with a financial interest in the case, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Where "the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). We apply this strong presumption. Shackling, while odious and a last resort, does not strip a trial of its basic elements and, at least in its less extreme forms, is susceptible of harmless error analysis.

The state then has the burden of proving beyond a reasonable doubt that constitutional error "did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. The *Chapman* test has recently been reaffirmed. *Yates v. Evatt*, ─── U.S. ───, 111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432 (1991). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous.... To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* at ───, 111 S.Ct. at 1893. We, therefore, must ask "what evidence the jury actually considered in reaching its verdict" and then look at the nature of the error. *Id.*

Although the evidence offered against Castillo was circumstantial, the state demonstrated that he was guilty of aiding and abetting the murder of Reimer. He conferred with Arreaga as the would-be murderer entered the bar to kill his victim. He took up a position as a guard of Arreaga's escape, armed with a rifle, the presence of which he implausibly explained. He used the rifle, firing shots to warn off all possible pursuers. He joined Arreaga in the escape. He congratulated Arreaga on the work they had jointly done. The evidence established that Castillo shared Arreaga's intent to kill and was "present for the purpose of assisting in [the crime's] commission." *People v. Rodriguez*, 42 Cal.3d 730, 230 Cal.Rptr. 667, 685, 726 P.2d 113, 131 (1986) (quoting *People v. Villa*, 156 Cal.App.2d 128, 318 P.2d 828, 832 (Cal.Dist. Ct.App.1957)). On the basis of this evidence he could properly be found guilty of aiding and abetting and therefore of committing first-degree murder. *Id.*

The evidence on which the jury acted must now be evaluated in light of the court's error in too quickly permitting shackling. The waist chain could not be seen by the jury. Counsel for Castillo argues that the jury might have inferred the presence of restraints from the fact that Castillo's co-defendant Arreaga walked to and from the witness stand while the jury saw Castillo as a seated witness who did not move while the jury was in the courtroom. Counsel's speculation is unpersuasive that such a subtle inference was drawn. The restraint in the courtroom was so worn by Castillo that the jury could not see it. Unseen, the restraint could not have affected the presumption of innocence or detracted from the decorum of the trial. *See Jones*, 899 F.2d at 885. Castillo made no showing that the shackling impaired his mental ability, inflicted pain or impeded communication with his counsel—the other harms which, if present, amount to the invasion of the constitutional right to due process. *Id.* The trial court's error was unimportant to everything the jury considered. As far as the jury was concerned, the chain was invisible and therefore the court's error was harmless beyond a reasonable doubt.

AFFIRMED.

BOOCHEVER, Circuit Judge, concurring:

I concur in the opinion, but would not address the issue of whether the shackling in this case violated the Constitution. The state trial judge was not arbitrary, capricious, or discriminatory in his ruling. Castillo was charged with first-degree murder and was housed in a disciplinary "separation area" for having assaulted other inmates. Under these circumstances, I believe there is a substantial question whether the type of shackling that was ordered, which was not visible to the jury and would not likely cause pain or a major interference to communication with counsel, reached the level of a constitutional violation of due process. None of the cases from this circuit directly addresses this issue, nor has it been specifically decided by the Supreme Court. Because I believe we should not rule on such an important constitutional issue unless necessary to resolve the appeal, I would rest the decision on the harmless error analysis. *See Kolender v. Lawson*, 461 U.S. 352, 361 n. 10, 103 S.Ct. 1855, 1860 n. 10, 75 L.Ed.2d 903 (1983)

(constitutional questions should not be decided in advance of the necessity of doing so).