**David Jerome KING, Petitioner,**

v.

**Theo WHITE, Warden, et al., Respondents.**

**No. CV 93–2607–RJK(E).**

United States District Court,
C.D. California.

Nov. 4, 1993.

David Jerome King, pro se.

Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, CA, for respondents.

## ORDER ADOPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

KELLEHER, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein by United States mail on Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Robert J. Kelleher, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" on May 5, 1993. Respondent filed an Answer on August 4, 1993. Petitioner filed a Traverse on August 19, 1993.

## BACKGROUND

The facts of Petitioner's state court proceedings are well summarized in the California Court of Appeal opinion. Answer Exhibit "A" at 17–20. Briefly, Petitioner's first trial ended in a mistrial. *Id.* at 20. Petitioner's second trial resulted in convictions for multiple crimes, including one count of sodomy (Count VI) and two counts of oral copulation in concert (Counts VII and VIII). *Id.* at 17. Petitioner represented himself at both trials.

## SUMMARY OF PETITIONER'S CONTENTIONS

Petitioner contends:

(1) He was denied a copy of the transcript of his first trial to prepare for his second trial, in violation of the Fourteenth Amendment;

(2) His shackling during the second trial violated the Fourteenth Amendment;

(3) The denial of his motion for "advisory counsel" violated the Sixth Amendment;

(4) The prosecution's failure to elect which acts to present to the jury and the state court's jury instruction on unanimity denied Petitioner due process and the right to a jury trial;

(5) The trial court erroneously imposed full consecutive sentences for Count VI (forcible sodomy) and Count VII (oral copulation) pursuant to section 667.6(c) of the California Penal Code;

(6) The state courts did not apply state law evenhandedly, in violation of due process; and

(7) The cumulative effect of the above-alleged errors demonstrates the errors were not harmless (Petition ¶ 10).

## DISCUSSION

For the reasons discussed herein, the Petition should be denied and dismissed with prejudice.

### I. The Trial Court did not Improperly Deny Petitioner a Copy of the Transcript of the First Trial.

#### A. Facts

The facts relevant to this issue are novel and somewhat convoluted. On May 12, 1986,[1] Petitioner made a motion for a copy of the transcript of his first trial (Aug. RT 109–10). That motion was granted (*Id.* at 110). Petitioner's second trial was scheduled for June 17 (*Id.* at 107). On June 4, Petitioner informed the court that Petitioner had not yet received a copy of the transcript (*Id.* at 226). Upon investigation, the court determined that "somehow" the order never went to the court reporter and no transcript had been prepared (*Id.* at 230). The court then informed Petitioner that a copy of the transcript could not be prepared in time for his scheduled trial date (*Id.*). Petitioner was offered a continuance, which he refused (*id.* at 231–32). In refusing a continuance, Petitioner apparently relied upon his *state* statutory right to a trial within 60 days. *See* Cal.Penal Code § 1382(b). The court then rescinded its order for the transcript (Aug. RT at 232).

Petitioner raised the issue again on June 17 (*Id.* at 234–35). The court continued the matter until June 18 to speak with the court reporter (*Id.* at 236–37). On June 18, the court informed Petitioner that, according to the court reporter, it would take three weeks[2] to complete the transcript (*Id.* at 238). The court told Petitioner the transcript "cannot physically be prepared" by the trial date (*Id.* at 239). The court again offered Petitioner a continuance "for three weeks or for whatever you want" (*Id.*). Petitioner again refused to waive his state statutory right to a trial within 60 days (*Id.*).

Petitioner again raised the issue with the court on June 26, the next to last day the trial could begin under state law without Petitioner's consent to a continuance. The court explained that the transcript had not yet been prepared because the court reporter had been on vacation and because no one else could prepare the transcript (*Id.* at 256–60).[3]

The court reporter was summoned to court to explain the situation (*Id.* at 261). The court reporter stated she did not receive notice to prepare the transcript until June 5, the day before she was scheduled to go on vacation, from which she returned on June 13 (*Id.* at 262). She further testified that the order to prepare the transcript did not have a "date due" on it (*Id.*). According to the court reporter, the earliest the transcript could be ready was July 7 (*Id.* at 264). Again, the court offered a continuance, but Petitioner refused (*Id.* at 264).

Petitioner's second trial began on June 27 (RT at 33). The last prosecution witness called was the victim, who finished her direct testimony on July 7 (RT at 312). On July 8, Petitioner received a partial transcript of the first trial. *See* Traverse at 7. This partial transcript included the testimony the victim gave at the first trial. *Id.* The court informed Petitioner that, to prepare the transcript, the court reporter, "[h]as been working straight through. She's been relieved of any other job" (RT 317). The trial did not resume until 1:55 p.m. on July 8 in order to allow Petitioner time to review the partial transcript (*Id.* at 317, 378). On July 9, Petitioner received the balance of the transcript (*Id.* at 378).[4] The court then offered Peti-

---

1. All further references to dates refer to the year 1986, unless otherwise specified.

2. Three weeks from this date would have been July 9, the date the full transcript finally was ready.

3. Because of differences in the note-taking styles of different court reporters, the transcript had to be prepared by the same reporter who took the notes (Aug. RT at 258–60).

4. Petitioner claims it took the court reporter only two days to prepare the transcript. Traverse at 8. Petitioner relies upon an entry in the minute order of July 8 ordering the court reporter to prepare the transcript (CT 242). Petitioner's contention is not persuasive. Preparation of the transcript certainly took longer than two days, given the length of the first trial. The first trial lasted six days (CT 197–202). The record of Petitioner's second trial, which included nine days of testimony, is three volumes, containing

tioner additional time to review the remainder of the transcript, which Petitioner accepted (*Id.* at 378–79). The Court provided Petitioner enough time to read the transcript fully; the court noted that Petitioner had indexed the transcript with approximately 100 markers (*Id.* at 510, 772, 774).[5]

During the defense's case, the Court permitted Petitioner to recall prosecution witnesses (CT 239–45). Petitioner did recall three of the five prosecution witnesses (*Id.*).

## B. *Discussion*

In *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) ("*Britt* "), the Supreme Court identified two criteria to be used in determining whether an indigent defendant, such as Petitioner, is entitled to a transcript of an earlier trial that resulted in a mistrial: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same function as the transcript." *Id.* at 227, 92 S.Ct. at 434; *see also Madera v. Risley*, 885 F.2d 646, 648 (9th Cir.1989). The Supreme Court subsequently interpreted the second prong of *Britt* to require an "adequate alternative." *Bounds v. Smith*, 430 U.S. 817, 822 n. 8, 97 S.Ct. 1491, 1495 n. 8, 52 L.Ed.2d 72 (1971).

■ This case turns on the second prong of the *Britt* test: whether there was an adequate alternative available to Petitioner. *Id.* at 227, 92 S.Ct. at 433. Implicit in this prong of the *Britt* test is the requirement that the alternative be constitutionally adequate. "All that is constitutionally required is an adequate alternative. And a bare minimum appears to fulfill this requirement." *Fisher v. Hargett*, 997 F.2d 1095, 1099 (5th Cir.1993).

Most courts analyzing the second prong of *Britt*, including the *Britt* court itself, have focused upon the proposed method of providing some substitute for a transcript. *See Britt*, 404 U.S. at 229 n. 4, 92 S.Ct. at 434 n. 4 (trial notes); *Mayer v. Chicago*, 404 U.S. 189, 194–95, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971) ("A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript"); *United States v. Mullen*, 550 F.2d 373, 374 (6th Cir.1977) (counsel's trial notes and recollection and reporter's notes, if necessary).

■ In the present case, the issue does not concern a method for providing some substitute for the desired transcript. Rather, the issue is whether the trial delay that, under the circumstances, would have been necessary to produce the desired transcript before trial would have provided Petitioner with a *constitutionally* adequate alternative to beginning trial without the desired transcript. The court repeatedly offered Petitioner a continuance of the trial. Petitioner repeatedly refused this alternative, relying upon his *state* statutory right to a trial within 60 days (*See* Aug. RT 230–32, 239, 264). The issue is whether the suggested continuance, which would have allowed the second trial to take place approximately 73–75 days after the mistrial,[6] would have been permissible

---

5. Petitioner contends he was given insufficient time to analyze the transcript. *See* Traverse at 8–9. The record refutes this contention (RT 510, 772, 774).

819 pages (*See* RT 1–819). Of those nine days, one was a half-day, in order to allow Petitioner time to review the transcript (RT 317, 378). In *Missouri v. Jones*, 545 S.W.2d 659, 664 (Mo.Ct. App.1976), the court observed it would be "impossible" to prepare an approximately 1,500 page transcript in 38 days. In the present case, it appears that the minute order of July 8 merely memorialized an earlier understanding that the transcript should be prepared as soon as possible (*See* Aug. RT 264–65). The trial court stated on July 8 that the court reporter had been working "straight through" to get the transcript ready (RT 317). This confirms that, as of July 8, the reporter already had been working on the transcript for some time.

6. June 27 apparently was the last day Petitioner could be tried under the 60–day state law. *See* Answer at 7–8. The full transcript was ready 12 days later (RT 378). Petitioner requested and received time to review the transcript. *Id.* 550 F.2d at 378–79. It is likely Petitioner would have wanted time to review the transcript before trial, had the trial been postponed until the transcript was ready. However, given Petitioner's insistence that trial begin as soon as possible, it

under *federal constitutional* law. The fact that the continuance evidently would have violated Petitioner's *state* statutory right to a trial within 60 days is irrelevant. "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984); *see* 28 U.S.C. § 2241.

█ In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) ("*Barker* "), the Supreme Court established a four part balancing test to evaluate alleged violations of a defendant's Sixth Amendment right to a speedy trial. The four factors are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* These factors must be applied "on an *ad hoc* basis." *Id.*

█ As to the first factor, the length of the delay in this case would have been approximately 73–75 days. Such a delay would have been relatively brief. Many cases have upheld much longer delays against speedy trial challenges. *See Barker,* 407 U.S. at 533–36, 92 S.Ct. at 2193–95 (five years); *Fisher v. Hargett,* 997 F.2d 1095, 1100 (5th Cir.1993) (32 months); *United States v. Greene,* 737 F.2d 572, 576 (6th Cir.1984) ("more than a year"); *United States v. Becker,* 585 F.2d 703, 707–08 (4th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979) (79 days between mistrial and second trial); *Jones v. United States,* 580 F.2d 349, 350–52 (8th Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 578, 58 L.Ed.2d 657 (1978) (five months between mistrial and second trial); *Arnold v. McCarthy,* 566 F.2d 1377, 1385–86 (9th Cir.1978) (seven and a half months between second arrest and retrial); *Blackburn v. U.S. Dist. Ct. for N. Dist. Cal.,* 564 F.2d 332, 334 (9th Cir.1977) (100 days between mistrial and second trial).

As to the reason for the delay, "all delay not caused by the defendant remains the government's responsibility." *Tucker v. Wolff,* 581 F.2d 235, 237 (9th Cir.1978). The third factor, defendant's assertion of his right to a speedy trial, also works in Petitioner's

is unlikely the delay would have been more than

favor. Petitioner consistently asserted his right to a speedy second trial. (*See* Aug. RT at 231–32, 239, 264).

The fourth factor is prejudice resulting to the defendant. The slight, additional delay while incarcerated arguably could have prejudiced Petitioner, although Petitioner perhaps would have benefitted from the additional time to prepare for trial through use of the transcript.

Balancing these four factors, this Court finds that the delay from the continuance offered to Petitioner would not have violated his constitutional right to a speedy trial. Therefore, the continuance offered to Petitioner provided a constitutionally adequate alternative, within the meaning of *Britt.* As Judge Engel of the Sixth Circuit noted:

> "The realities of court administration teach us that the procurement of a trial transcript may not always be promptly forthcoming and in heavily burdened metropolitan districts will usually not be. The demands of the Speedy Trial Act and the right to have a transcript upon retrial of a lawsuit must inevitably conflict. Where a case must be retried there is a great advantage to the defendant, the government, and the public in attending promptly to it. I would preserve as much discretion as possible in the trial judge to deal fairly and realistically with this problem as it may be presented to him at that time."

*United States v. Mullen,* 550 F.2d 373, 375 (6th Cir.1977) (Engel, J., concurring on transcript issue).

█ Several other considerations support this Court's conclusion. First, there was nothing so "arbitrary and unreasonable" or inherently unfair about the opportunities given Petitioner to utilize the transcript as to amount to a due process violation. *See United States v. MacCollom,* 426 U.S. 317, 323–24, 96 S.Ct. 2086, 2091, 48 L.Ed.2d 666 (1976) (plurality) (holding that conditions imposed on indigent petitioners seeking free transcripts to file writs of habeas corpus were not "so arbitrary and unreasonable ... as to require [their] invalidation" on due process grounds). Petitioner received the transcript

a few days.

before he put on his defense and was permitted to recall prosecution witnesses to cross-examine those witnesses with the transcript of their earlier testimony. Petitioner contends this procedure did not allow him to follow the testimony of prosecution witnesses on direct examination, thus hindering his ability to conduct cross-examination. Petition ¶ 10 (attachment at 2). Such hindrances, if they existed, did not rise to the level of a constitutional due process violation. All that is required are "the basic tools of an adequate defense," *Britt*, 404 U.S. at 227, 92 S.Ct. at 433, not the ideal tools of a perfect defense.[7]

■ Second, if the Court were to find constitutional error on the novel facts of this case, the Court would be announcing a "new rule" of constitutional law, in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny.

■ Third, reviewing the record as a whole, any error committed by giving the transcript to Petitioner *during* the trial, rather than before trial, was harmless. *Brecht v. Abrahamson*, — U.S. —, —, —, 113 S.Ct. 1710, 1714, 1722, 123 L.Ed.2d 353 (1993) (holding that harmless error analysis on collateral review of "trial errors" should examine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict"); *United States v. Bamberger*, 482 F.2d 166, 168 (9th Cir.), *cert. denied*, 414 U.S. 1041, 94 S.Ct. 543, 38 L.Ed.2d 332 (1973) (holding that errors in providing an indigent defendant with a transcript are subject to harmless error analysis).

## II. *Any Error Committed by The Trial Court in Shackling Petitioner Was Harmless.*

### A. *Facts*

■ On February 24, Petitioner allegedly attempted to escape from custody (RT 16).

During the alleged attempt, Petitioner reportedly destroyed the service floor panel of a bus and slipped one handcuff off (*Id.* at 16–17). Based on this alleged escape attempt, and out of concern for safety in the courtroom, the court ordered Petitioner shackled during the retrial, even though Petitioner had not been restrained during his first trial. (*Id.* at 5, 16–18, 764–66).[8] The restraint went from ankle to ankle and was approximately one-half inch thick (*Id.* at 380–81).

Arrangements were made so that the restraint would not be seen by jurors. Petitioner was brought into the courtroom before the jury entered (*Id.* at 4–5, 764). The restraint could not be seen by jurors as long as Petitioner kept his feet behind the barrier provided (*Id.* at 5, 764). Petitioner was allowed to question witnesses from a seated position (*Id.* at 6–7, 764). The judge and prosecutor went to Petitioner's table for side bar conferences (*Id.* at 85). When Petitioner wanted to make use of diagrams as exhibits, Petitioner was allowed to hand the exhibit to a Deputy Sheriff, who in turn would put the exhibit on the bulletin board (*Id.* at 317). If needed, witnesses were allowed to approach the exhibit and "put marks, or whatever [they are] asked to do, on the diagrams" (*Id.* at 318). Petitioner stated he had no objection to the arrangement regarding diagrams (*Id.*).

Although these arrangements were designed to keep the jurors from seeing the ankle chain, Petitioner voluntarily exposed the chain to the jury (*Id.* at 66, 764–65, 766). In fact, Petitioner showed the chain to each potential juror during *voir dire* and "received a clear response from each juror that they would not hold it against him" (*Id.* at 765).[9] Petitioner also rattled the chain to make as much noise as possible (*Id.* at 66, 765).[10]

---

**7.** Furthermore, the Court notes that the prosecution did not have a copy of the transcript either, at least as of the afternoon of July 7 (RT 312). *Cf. Mullen*, 550 F.2d at 374 (noting that "[t]he prosecution may not enjoy such an advantage" as having a copy of a transcript of an earlier mistrial when the defendant did not).

**8.** The alleged escape attempt took place prior to the first trial.

**9.** The record does not include a transcript of the *voir dire* proceedings (*See* RT 46, 64, 68, 78).

**10.** Petitioner later requested, and was granted, a special jury instruction informing the jury that

## B. *Discussion*

Assuming, *arguendo,* the trial court erred in shackling Petitioner, (*see Castillo v. Stainer,* 983 F.2d 145, 147 (9th Cir.1992), *as amended,* 997 F.2d 669 (9th Cir.1993)) ("*Castillo* ")), any such error was harmless.

In *Spain v. Rushen,* 883 F.2d 712 (9th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990), the Ninth Circuit identified five harms potentially resulting from physical restraints. *See also Castillo,* 983 F.2d at 149. Those potential harms are:

(1) Physical restraints may cause jury prejudice, reversing the presumption of innocence;

(2) Physical restraints may impair the defendant's mental faculties;

(3) Physical restraints may impede the communication between the defendant and his lawyer;

(4) Physical restraints may detract from the dignity and decorum of the judicial proceedings; and

(5) Physical restraints may be painful to the defendant. *Spain v. Rushen,* 883 F.2d 712, 720–21 (9th Cir.1989).

Petitioner does not contend that the restraint impaired his mental faculties or was physically painful to him. *See* Petition ¶ 10. Because Petitioner represented himself, there could not have been any impediment in communicating with his counsel.

The court took adequate steps to ensure that the restraint would not be seen by the jury. The restraint would not have been seen by the jury, absent Petitioner's voluntary conduct. Thus, the restraint "could not have affected the presumption of innocence or detracted from the decorum of the trial." *Castillo,* 983 F.2d at 149 (holding that an error in restraining the defendant was harmless where the restraint could not be seen by the jury).

Petitioner's main assertions regarding prejudice revolve around the procedures employed for diagrams and side bar conferences. *See* Traverse at 19. As stated earlier, Petitioner consented to the procedure the restraint should not have any bearing upon

regarding diagrams (RT 317–18). Nevertheless, Petitioner argues that the jury might have inferred from these procedures that Petitioner was restrained. A similar situation existed in *Castillo,* where the petitioner argued the jury could have inferred the presence of restraints from the fact that they never saw petitioner walk to the witness stand. 983 F.2d at 149. The Ninth Circuit found this alleged inference "unpersuasive," *id.,* as this Court finds the alleged inference in the present case.

In any event, this issue became moot when Petitioner voluntarily displayed the restraint to the jury during *voir dire* (RT 765). Petitioner thereby waived his right to raise the present objection to the restraint, as does a defendant who chooses to dress in jail clothes as a trial tactic to draw sympathy from the jury. *See Estelle v. Williams,* 425 U.S. 501, 508, 512–13, 96 S.Ct. 1691, 1695, 1697, 48 L.Ed.2d 126 (1976) (holding that, because criminal defendants sometimes choose to appear in jail clothes in hopes of eliciting sympathy from the jury, an objection must be made when non-jail clothes are not made available); *Felts v. Estelle,* 875 F.2d 785, 786 (9th Cir.1989) (noting that, had non-jail clothes been available and had defendant chosen not to wear them, a court reasonably could conclude that defendant's decision "was predicated upon a conscious attempt to elicit sympathy from the jury").

Errors resulting from the use of physical restraints are subject to harmless error analysis. *Castillo,* 997 F.2d at 669 (holding that, where the petitioner was not "bound and gagged or forced to wear prison clothes or medicated" against his will, an error in restraining him or her is subject to harmless error analysis); *id.* 983 F.2d at 148. For the reasons discussed above, this Court finds that any errors in restraining Petitioner did not have a "substantial and injurious effect or influence in determining the jury's verdict" and are therefore harmless. *See Brecht v. Abrahamson,* —— U.S. ——, ——, ——, 113 S.Ct. 1710, 1714, 1722, 123 L.Ed.2d 353 (1993).

the determination of guilt (CT 255).

### III. The Trial Court did not Violate Petitioner's Sixth Amendment Rights by Denying Him Advisory Counsel.

Prior to his first trial, Petitioner requested advisory counsel (Aug. RT 9–10). This request was denied (*Id.* at 10). Petitioner did not renew his request prior to his retrial.

Assuming, *arguendo*, Petitioner did not procedurally default on this claim,[11] the claim fails as a matter of law. There is no constitutional right to advisory counsel. *Locks v. Sumner*, 703 F.2d 403, 407–08 (9th Cir.1983); *see McKasle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). Only constitutional issues may be raised on habeas corpus. *Estelle v. McGuire*, — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385, 396 (1991). Accordingly, this claim does not raise an issue cognizable on habeas corpus.

### IV. The Prosecution's Failure to Elect and the Court's Jury Instruction on Unanimity did not Violate Due Process or Deny Petitioner the Right to a Jury Trial.

#### A. Facts

Petitioner was charged with eight counts of rape and two counts of oral copulation (CT 79–92). During its case in chief, the prosecution presented evidence of ten acts of rape and six acts of oral copulation. *See* Answer Exhibit "A" at 24. During closing argument, the prosecutor specified which of the acts constituted the charged crimes for each of the counts, except for Counts VII and VIII (oral copulation), for which she specified three acts (RT 675–79).

On July 16, the jury presented the court with a written question, which read:

"We, the jury, in the above-entitled action request the following: the testimony described more criminal acts, some of which were repeated, than the number of charges brought. One such example is oral copulation. Must we identify each count with a specific occurrence in arriving at a verdict?" (RT 719).

The court's relevant response was:

"[I]n order to find the defendant guilty, *all the jurors must agree that he committed this same act or acts.* It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict. So if you—let's assume you find the defendant hypothetically guilty. *You can agree that at a given point, a given act occurred.* You can find the defendant guilty at that point of a given count. Now, that count, you don't have to specify exactly where that act occurred. *But you all have to agree upon a given act or acts before you can find the defendant guilty of a given count.*"

.... (Id. at 720) (emphasis added).

The court then entertained the following questions from jurors:

JUROR KITTINGER: If we believe that 7 individual acts were committed, yet we have 5 counts of that act, *if we can agree on 5 acts*, does that satisfy—

THE COURT: That's correct.

JUROR KITTINGER: Okay.

....

JUROR COHEN: I think we don't simply understand the law.

COURT: Okay. And the law is not all that clear with regard to a lot of things.

---

11. The California Court of Appeal explicitly relied upon procedural grounds in refusing to entertain this claim. Answer Exhibit "A" at 27. The California Supreme Court denied Petitioner's petition for review without citation. Answer Exhibit "C." The California Supreme Court also denied Petitioner's state habeas corpus petition, citing only *In re Waltreus*, 62 Cal.2d 218, 225, 397 P.2d 1001, 42 Cal.Rptr. 9, *cert. denied*, 382 U.S. 853, 86 S.Ct. 103, 15 L.Ed.2d 92 (1965) (noting that claims presented on direct review may not be relitigated on state habeas). Answer Exhibit "E." Accordingly, "looking through" the state decisions, it appears Petitioner has procedurally defaulted on this claim. *Ylst v. Nunnemaker*, — U.S. —, — – —, 111 S.Ct. 2590, 2594–95, 115 L.Ed.2d 706 (1991). Because Petitioner has not demonstrated cause for the procedural default or prejudice from the alleged constitutional violation, it appears that, for this reason alone, habeas relief is unavailable. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir.1986)

But if you have any questions, please ask me.

Because I think, Mr. Kittinger, if there are more acts charged, *what you have to do is determine whether or not you can agree on a given number of those acts.* JUROR KITTINGER: *That matches the number of counts.*

COURT: That's correct. *As long as you're in agreement on what those acts are.* Okay? (*Id.* at 720–21) (emphasis added).

## B. *Discussion*

Petitioner contends the jury might have inferred from the court's instructions that the jury need not agree unanimously on each *act* before finding Petitioner guilty of a crime.[12] When a federal habeas petitioner challenges the validity of a state jury instruction, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Jeffries v. Blodgett,* 988 F.2d 923, 938 (9th Cir. 1993). The instruction "may not be judged in artificial isolation" but must be considered "in the context of the instructions as a whole and the trial record." *Estelle,* —— U.S. at ——, 112 S.Ct. at 482. There must be a "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the constitution. *Boyde v. California,* 494 U.S. 370, 381, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).

■ "[A] general unanimity instruction will normally suffice to instruct the jury that they must be unanimous as to the elements which form the basis of the conviction." *Jeffries v. Blodgett,* 988 F.2d 923, 937 (9th Cir. 1993); *United States v. Payseno,* 782 F.2d 832, 835 (9th Cir.1986). A general unanimity instruction may not suffice where "there is *a genuine possibility* of juror confusion or that conviction may result from different jurors concluding that the defendant committed dif-

ferent acts." *Jeffries v. Blodgett,* 988 F.2d 923, 937 (9th Cir.1993) (emphasis added); *United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983). "Juror confusion is often a genuine possibility when the nature of the evidence is complex, when there is a discrepancy between the evidence and the indictment, or some other particular factor creates such a possibility of confusion." *Jeffries v. Blodgett,* 988 F.2d 923, 937 (9th Cir.1993); *United States v. Frazin,* 780 F.2d 1461, 1468 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986).

Reviewing the record as a whole, there is no "genuine possibility" juror confusion occurred in the present case. *See United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983). Within the space of two transcript pages, the trial judge five times instructed the jury that they must agree unanimously on each *act* (RT 720, lines 6–8, 12–13, 16–17; RT 721, lines 13–14, 16–17). When the court referred to unanimity regarding the *number* of crimes, it immediately reaffirmed that unanimity also is required regarding the *acts* (RT 721, lines 13–17). Accordingly, the court's instructions did not "so infect[ ] the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991).

## V. *Imposition of Consecutive Sentences Under California Penal Code Section 667.6(c) does not Raise a Federal Claim Cognizable on Habeas Corpus. If Petitioner Were to Make a Related Due Process Challenge, Any Potential Due Process Error Would be Found Harmless.*

■ Petitioner contends the California court imposed consecutive sentences for Counts VI (sodomy) and VII (oral copulation) in violation of California Penal Code section 667.6(c).[13] At the time of Petitioner's conviction, section 667.6(c) defined forcible sodomy or oral copulation as violating California Penal Code sections 286 or 288 by "force, vio-

---

12. This assertion has potential application only to those counts (VII and VIII) for which the prosecution did not elect specific acts.

13. The California Court of Appeal reversed Petitioner's conviction on Count VI. Answer Exhibit "A" at 18, 33. Therefore, this issue appears to be moot.

lence, duress, menace or *threat of great bodily harm.*" *Hunter v. Aispuro,* 982 F.2d 344, 345–46 (9th Cir.1992), *cert. denied,* ─── U.S. ───, 114 S.Ct. 240, ─── L.Ed.2d ─── (1993) ("*Hunter*"). However, the court instructed the jury pursuant to California Penal Code sections 286 and 288 that forcible oral copulation and forcible sodomy may be accomplished by force, violence, duress, menace or *fear of immediate and unlawful bodily injury.* Answer Exhibit "A" at 30.[14]

■ Federal habeas corpus relief may be granted "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Mere errors in the application of state law are not cognizable on habeas corpus. *Id.; Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984).

"Matters relating to sentencing and serving of a sentence are governed by State law and do not raise a Federal constitutional question." *Howard v. Craven,* 306 F.Supp. 730, 732 (C.D.Cal.1969); *see also Miller v. Vasquez,* 868 F.2d 1116, 1119 (9th Cir.1989), *aff'd after remand,* 912 F.2d 469, *cert. denied,* ─── U.S. ───, 111 S.Ct. 1591, 113 L.Ed.2d 654 (1991) (holding that whether assault with a deadly weapon qualifies as a "serious felony" under California sentencing enhancement provision is a question of state sentencing law); *Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986) (federal habeas relief "unavailable for alleged error in the interpretation or application of state law"); *Sturm v. California Adult Authority,* 395 F.2d 446, 448 (9th Cir. 1967), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 466 (1969) ("a state court's interpretation of its [sentencing] statute does not raise a federal question"). Because Petitioner alleges only errors of state law regarding consecutive sentencing, this claim must be denied and dismissed.

■ If Petitioner were to make a due process challenge regarding sentencing under section 667.6(c), any potential error would be harmless. *See Hunter,* 982 F.2d at 349 (such errors are subject to harmless error analysis). The victim testified that Petitioner, who had a gun, and another male, the driver of a car, who had a knife, took her to a location near a freeway (RT 255). Acting alone, Petitioner raped her and forced her to orally copulate him, while he had the gun in his pocket (*Id.* at 256–57).[15] The victim then tried to escape, but Petitioner caught her, knocked her down and choked her, until she almost passed out (*Id.* at 258–59). The driver then joined Petitioner and raped the victim (*Id.* at 259–60). Petitioner then raped the victim again, while he made her orally copulate the driver at the same time (*Id.* at 260–61). The two men switched positions (*Id.* at 261). Petitioner then said to the victim, "we can't have no witnesses. We have to eliminate all witnesses," while putting the gun to the victim's forehead (*Id.* at 263).

In light of this record, a "reasonable jury could only find that the presence of the gun combined with all the other circumstances constituted a threat of great bodily injury" to the victim. *Hunter,* 982 F.2d at 349. Accordingly, any potential error did not have a "substantial and injurious effect or influence in determining the jury's verdict," and was, therefore, harmless. *See Brecht v. Abrahamson,* ─── U.S. ───, ───, ───, 113 S.Ct. 1710, 1714, 1722, 123 L.Ed.2d 353 (1993); *Hunter,* 982 F.2d at 349.

## VI. *Any Failure By The California Courts to Apply State Law "Evenhandedly" Does Not Raise a Federal Claim.*

■ Petitioner alleges that the California courts departed from the rule of *People v. Hosner,* 15 Cal.3d 60, 538 P.2d 1141, 123 Cal.Rptr. 381 (1975), in denying him relief for the failure to provide him a transcript prior to his retrial.[16] Petitioner contends this al-

---

14. The discrepancy between these related statutes existed from 1980 to 1985 because of an apparent oversight by the California Legislature. *Hunter,* 982 F.2d at 346 n. 1.

15. It was at this point that the sodomy allegedly took place (RT 257).

16. See issue I above.

leged departure from California law violates his Fourteenth Amendment rights because state law was not applied "evenhandedly." Petition ¶ 10 (attachment at 8).

"We have said time and again that the Fourteenth Amendment does not assure uniformity of judicial decisions [or] immunity from judicial error.... Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington,* 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962); *see also Camacho v. White,* 918 F.2d 74, 78 (9th Cir.1990) (citing *Beck* with approval). Accordingly, this claim does not present a federal issue cognizable on habeas corpus.

**VII.** *The Cumulative Effect of Any Errors Are Harmless.*

■ After reviewing the record as a whole, this Court concludes that the cumulative effect of the alleged errors discussed above did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* —— U.S. ——, ——, ——, 113 S.Ct. 1710, 1714, 1722, 123 L.Ed.2d 353 (1993).

### RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition with prejudice.

DATED: September 21, 1993.

*NOTICE*

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.